J-S22005-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| QUASIM SMITH | : | |
| | : | |
| Appellant | : | No. 1394 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 17, 2025
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0005308-2022

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED JULY 22, 2026**

Quasim Smith appeals from the judgment of sentence entered by the Philadelphia County Court of Common Pleas on January 17, 2025. Smith argues the search warrants executed on his home and cell phone were not supported by the requisite probable cause. After careful review, we affirm.

On June 6, 2022, Smith was arrested and charged with aggravated assault and related offenses in connection with a shooting that occurred a few months prior. The trial court summarized the factual history of this matter as follows:

> On March 11, 2022, police were called to the 1900 block of East Washington Lane based on reports of a person with a gun and possible shooting. Police arrived at the scene and observed a gold Ford Escape with a person inside. Police determined that the person, later identified as Carlton Henderson, had sustained multiple gunshot wounds including a gunshot wound to the head. Police immediately transported [] Henderson to the hospital.

Police observed a second victim, later identified as Nake Wallace, sitting injured on the sidewalk being helped by ambulance staff.

Both victims were taken to the nearby Einstein Hospital and treated for their gunshot wounds. [] Henderson required extensive surgery to correct the damage to his body, including to his brain and its outer covering. During [] Henderson's extensive surgery, a bullet fragment was recovered from the skin around the injured area. [] Wallace was treated for gunshot wounds to his right leg and right hand. [] Wallace suffered several complications which left him with an inability to heal causing his leg wound to continually bleed and ooze.

After the crime scene was secured, detectives recovered seven .9 millimeter fired cartridge casings ("FCCs"), nine .40 caliber FCCs, and two fired projectiles. Detectives also recovered video surveillance footage from a nearby convenience store camera.

The footage depicted at least three people arriving to the scene in a Nissan Maxima with license plate number LTV2958. At approximately 2:12 pm, two people exit the vehicle at the same time, one from the front passenger seat, and a second from the rear passenger seat. Both shooters were dressed in all black with face coverings. The second passenger, who exited from the rear passenger door, was wearing a distinct Nike jacket with a "V" symbol across the chest. After both passengers exited, the passengers each drew their handguns and began repeatedly firing into the gold Ford Escape located behind their Nissan.

At trial, the parties stipulated to Officer Montowski's testimony. His testimony indicated that approximately 45 minutes after the shooting, he encountered [Smith] leaving a home located on the 7100 block of North 20th Street. During this encounter, Officer Montowski recorded his interaction with [Smith] on [a] body worn camera. The video depicts [Smith] wearing an identical black jacket with a distinct "V". When detectives asked Officer Montowski to attempt to identify the shooter in the recovered video, Officer Montowski positively identified [Smith] a few weeks after the shooting.

Detectives determined that the Nissan Maxima used in the shooting was registered to Trevor Stevenson, with a known address of registered address 7172 North 20th Street. Police located the vehicle on the day of the shooting. The crime scene

unit recovered five latent fingerprints on the doors the shooters used. Three of the fingerprints were matched to known samples, namely [Smith]'s known sample and [] Stevenson's known sample. The two fingerprints that matched [Smith]'s known fingerprints were lifted from the rear passenger door, while [] Stevenson's fingerprint was lifted from the front passenger door.

Based on all of the aforementioned evidence, detectives obtained a search warrant for [Smith]'s residence. During this search, detectives recovered several items including [Smith]'s black Apple iPhone and a black Nike brand zip up hooded jacket with a "V" symbol across the chest. The front of the recovered Nike jacket tested positive for gunshot residue.

During this search, [Smith] spoke with police about his whereabouts for the day of the shooting. [Smith] stated that he had been in his house for most of the day and had only stepped outside after receiving a phone call about a potential marijuana sale. To follow up on [Smith]'s call history, police obtained additional warrants to search the contents of [Smith]'s cell phone and his cell phone records.

Upon warrant approval, police conducted an analysis of location data on [Smith]'s Apple iPhone for the day of the shooting. The location data was gathered from both call detail record data and timing advance data from the phone provider. The location data showed that [Smith]'s phone was within the block of the shooting from 2:09:54 pm until 2:12:12 pm. Also, [Smith]'s phone made a call at approximately 2:20:27 pm near the intersection of Cheltenham Avenue and Old York Road, a few blocks from the shooting scene.

Contents of [the] phone recovered from [Smith]'s home showed the device is owned and used regularly by [Smith]. Namely, the phone was registered with the email address QuasimSmith@yahoo.com and contained numerous photos of [Smith]. Several photos of [Smith] depict him in an identical black Nike jacket with the large "V" symbol. Significantly, one of the photos that depicts [Smith] wearing the identical jacket was taken or otherwise accessed the day of the shooting around 8:30 pm.

[Smith]'s Google search history contained several searches about the shooting. Detectives determined that on March 25, 2022, [Smith] began searching "shooting Washington ln." [Smith]'s next

search was for a news article written about the shooting incident. [Smith] then repeated his "shooting Washington In" search. [Smith] then modified his search terms to "carlton Henderson," the name of one of the victims. This search was followed up by "carlton Henderson Philadelphia."

Trial Court Opinion, 8/8/25, at 3-7 (citations and footnotes omitted).

On January 11, 2024, on the day scheduled for a waiver trial, Smith first presented a motion to suppress, arguing that the four corners of the affidavits authorizing the searches of Smith's home and cell phone lacked probable cause. The court denied the motion.

The matter immediately proceeded to a bench trial. The bench trial was bifurcated over two days, and finished on February 13, 2024. At the conclusion of evidence on February 13, 2024, the court found Smith guilty of two counts of aggravated assault, and one count each of conspiracy, possession of a firearm prohibited, and possessing an instrument of crime.[1]

On January 17, 2025,[2] the court sentenced Smith to an aggregate term of 6 to 15 years' incarceration, plus 2 years' probation. Smith filed a post-sentence motion for reconsideration of sentence, which was denied by operation of law. This timely appeal followed.

_____

[1] 18 Pa.C.S.A. § 2702(a)(1), 18 Pa.C.S.A. § 903(a)(1), 18 Pa.C.S.A. § 6105(a)(1), 18 Pa.C.S.A. § 907(a), respectively.

[2] It appears from the docket that the large delay in sentencing was due to a change of defense counsel and a series of defense continuance requests, and that Smith waived speedy sentencing. *See* Docket Sheet, CP-51-CR-0005308-2022, at 17-20.

- 4 -

Smith raises the following issues on appeal:

1. Whether the trial court erred in denying [Smith]'s suppression motion and in finding that search warrant # 252930 was valid for [Smith]'s residence of 1908 Plymouth Street, Philadelphia, PA 19138 because the four corners of the affidavit lacked the requisite probable cause to establish a reasonable nexus between the shooting incident and the location, as it failed to state particularized facts or reliable basis for believing that specific evidence related to the crime and [Smith]'s alleged involvement would be found at the location at issue.

…

3. Whether the trial court erred in denying [Smith]'s suppression motion and in finding that search warrant # 253640 was valid for the stored data content of a black iPhone belonging to [Smith] because the four corners of the affidavit lacked the requisite probable cause to establish a reasonable nexus between the shooting incident and the use or possession of [Smith]'s cell phone, as it failed to state particularized facts or reliable basis for believing that specific evidence related to the crime and [Smith]'s alleged involvement would be found on the device at issue.

…

Appellant's Brief, at 4-5 (trial court answers and suggested answers omitted).[3]

On appeal, Smith argues the suppression court erred in determining the warrants used to justify the search of Smith's home and cell phone were supported by probable cause.

Our standard of review of a trial court's ruling on a suppression motion is whether the factual findings are supported by the record

_____

[3] Smith raised a total of 5 issues in his 1925(b) concise statement, that he lists again in his statement of the issues involved in his appellate brief. However, Smith notes that he agrees with the trial court that one of the issues was waived and that he has chosen not to pursue the other two issues on direct appeal. We commend Smith for narrowing the issues to only those he believes may have merit.

and whether the legal conclusions drawn from those facts are correct. We are bound by the facts found by the trial court so long as they are supported by the record, but we review its legal conclusions de novo. The trial court has sole authority to pass on the credibility of witnesses and the weight to be given to their testimony. Our scope of review is limited to the record developed at the suppression hearing, considering the evidence presented by the Commonwealth as the prevailing party and any uncontradicted evidence presented by the defendant.

*Commonwealth v. Rivera*, 316 A.3d 1026, 1031 (Pa. Super. 2024) (quotation marks and citations omitted).

At the suppression hearing, Smith asked the court to review the four corners of the search warrants to determine if there were probable cause to go into Smith's house and retrieve items, including his jacket and his cell phone. *See* N.T., 1/11/24, at 3. Smith argued the search warrant for the house lacked sufficient probable cause in the four corners of the warrant because it was not enough that the police saw a video where one of the shooters is seen wearing a similar jacket to Smith's, where Smith is not readily identifiable in the video and he was wearing different pants and sneakers when he was stopped during a traffic stop after the shooting. *See id.* at 6. Smith argued that there was no nexus between the shooting on the street, as captured on video, and Smith's home. *See id.* at 6-7. Smith conceded that the police had probable cause to search the car, registered to Stevenson, which was captured on the video as being involved in the shooting. *See id.* at 7. However, Smith argued that his house was not connected to the shooting at all, and is just his residence. *See id.* Finally, Smith argued that since police

had no right to be in his home, which is where they found his cell phone, they similarly had no probable cause to search the phone. ***See id.***

The court disagreed with Smith, and denied suppression, reasoning as follows:

> I think they did have probable cause to believe that the place where a person lives may house items that they were wearing at the time and may house items that—this was a neutral, detached magistrate that looked at this and established that there was probable cause, that people keep their clothes at the location where they live. I think that's a reasonable place for them to look for things.
>
> He was dressed a little bit differently after he was allegedly involved in this shooting. I don't know if he was or wasn't. But there appears some slight change in appearance, so they did have the right to look in the house for the clothes he was wearing at the time and any other items of evidentiary value, including a cell phone, mail, and the jacket.
>
> And probable cause does exist, again, for the search of the—by the way, the probable cause standard is not beyond a reasonable doubt. It's probable cause for a warrant.
>
> And there is probable cause to search. There is plenty of supporting documentation in the probable cause [affidavit] to show why they needed to find GPS data and photos potentially of guns involved and things like that.
>
> I think there is probable cause, that it does exist in these two warrants.

***Id.*** at 9-10.

On appeal, Smith maintains the record does not support the suppression court's conclusion that the warrants were supported by probable cause.

Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution each require that search

warrants be supported by probable cause. **See Commonwealth v. Jones**, 988 A.2d 649, 655 (Pa. 2010). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." **Commonwealth v. Johnson**, 42 A.3d 1017, 1031 (Pa. 2012) (citation omitted).

The United States Supreme Court established a "totality of the circumstances" test for determining whether a request for a search warrant under the Fourth Amendment is supported by probable cause. **See Jones**, 988 A.2d at 656. The Pennsylvania Supreme Court adopted this test "for purposes of making and reviewing probable cause determinations under Article 1, Section 8." **Id**. Therefore, under the totality of the circumstances test, the task of an issuing authority is "simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." **Commonwealth v. Torres**, 764 A.2d 532, 537 (Pa. 2001) (citation and internal quotation omitted).

"At any hearing on a motion for the … suppression of evidence … obtained pursuant to a search warrant, no evidence shall be admissible to establish probable cause other than the affidavits [sworn to before the issuing

authority].” Pa.R.Crim.P. 203(D). Our review of a challenge to a search warrant based on an affidavit of probable cause

> is limited to the information within the four corners of the affidavit. Thus, a reviewing court may not conduct a *de novo* review of the issuing authority's probable cause determination but, instead, is tasked simply with the duty of ensuring the issuing authority had a substantial basis for concluding that probable cause existed. Unless the issuing authority had no substantial basis for its decision, a reviewing court must affirm.

***Commonwealth v. Shackelford***, 293 A.3d 692, 698 (Pa. Super. 2023) (citations, quotation marks, and footnote omitted). The issuing authority must view the affidavit “in a common sense, nontechnical, ungrudging and positive manner.” ***Commonwealth v. Mendoza***, 287 A.3d 457, 462 (Pa. Super. 2022) (citation omitted).

> The task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the “veracity” and “basis of knowledge” of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

***Id***. (citation omitted).

Here, Smith's claim that the search warrants lacked probable cause is not convincing. We agree with the trial court that the facts set forth in the affidavits of probable cause were sufficient for police to obtain a search warrant for Smith's home and cell phone. ***See Jones***, 988 A.2d at 656.

The affidavit of probable cause for the search of Smith's home provided as follows:

On 3/11/22 at approximately 2:12 PM Philadelphia Police responded to the area of 1900 E. Washington Lane for a radio call person with a gun, report of a person shot. Upon arrival, Office Fanes #3025 located complainant #1 who was seated in the driver seat of below vehicle suffering from gunshot wounds to the head and to his right hand. Complainant #1 was scooped and transported to Albert Einstein Medical Center by PC 1429. Additional officers responded and located complainant #2 at 7400 Ogontz Ave suffering from multiple gunshot wounds to his right hand and leg. Complainant #2 was transported to AMC by Medic 56B. Both complainants were treated by Dr. Goldberg and listed in critical condition. Two separate crime scenes were established and secured by police. Scene #1: 1900 E. Washington lane and Scene #2: Washington Lane an Limekiln Pike.

Det. Obrien #630 and Det. Goshert #903 responded to the scene which consisted of (7) 9mm and (9) .40 caliber FCCs. (2) projectiles and a gold Ford Escape. The area was checked for additional witnesses with negative results. All ballistics evidence was recovered and submitted to FIU. The gold Ford Escape was towed to 4298 Macalester.

RTCC located at Thouron Ave and Washington Lane depicted both complainants seated inside the gold (07 Ford Escape PA #LSC9401 VIN: IFMYU93197KA90369) behind a grey (09 Nissan Maxima PA #LTV2958 VIN: IN4AASIE49C832371). The passenger occupants of the grey Nissan Maxima exit and immediately begin firing into the Ford Scape as the Nissan drives off. The two offenders then fled on foot. The offender who exited from the back seat is wearing a black jacket with a distinct pocket on the left sleeve.

On 03/11/22 at approximately 3:00 PM while operating RPC #24. P/O Montowski stopped (Quasim Smith DOB: 07/11/95) in front of 7172 N. 20th St. where the vehicle owned by (Trevor Stevenson) was registered and used in the shooting. P/O Montowski had his body camera filming the stop. The video showed Quasim wearing the same jacket as the offender shown in the RTCC camera located at Thouron Ave and Washington Ln. The jacket has a distinct pocket on the left sleeve near the bicep and shoulder area of the jacket as well as a distinctive grey "V" across the front of the jacket.

On 03/25/22 at approximately 2:25 P/O Montowski was interviewed, shown the RTCC video from Thouron Ave. and Washington Ln. showing the shooter. P/O Montowski identified the male on the RTCC video as Quasim Smith DOB: 07/11/95 after conducting the pedestrian investigation of Quasim on 03/11/22 at approximately 3:00 PM. P/O Montowski stated even though Quasim was wearing a mask in the RTCC video, the eye, nose, complexion and facial features resembled Quasim after observing him during the stop approximately forty five minutes after the shooting. P/O Montowski did state it appears Quasim changed his pants and sneakers because the pants and sneakers he was wearing were different than the pants and sneakers depicted on the RTCC camera located at Thouron and Washington Ln.

BMV records show (Quasim Smith DOB: 07/11/95) resides at 1908 Plymouth St. Philadelphia PA 19138.

The affidavit believes that probable cause exists to search 1908 Plymouth St. Philadelphia PA. 19138 for any and all firearms, ammunition, ballistics evidence, black jacket with distinct left sleeve pocket with a "V" on the front, and any and all items deemed to be of evidentiary value.

The affiant believes probable cause exists after P/O Montowski stopped Quasim at the residence where the vehicle used in the shooting was registered (7172 N. 20th St.) approximately forty five minutes after the shooting. Quasim has the same build, complexion, facial structure, and wearing the same jacket as the male in the RTCC video at Thouron and Washington Ln who was shown exiting the rear passenger side of the vehicle and fired into a gold Ford Escape where both occupants suffered multiple gunshot wounds. P/O Montowski was able to identify Quasim as the male shown in the RTCC video.

Appellant's Brief, at Exhibit I.

The suppression court did not err in finding the above search warrant was supported by probable cause. The court found that based on the totality of the circumstances, "there was enough information provided to support [the] 'common-sense decision' that there was a 'fair probability that … evidence of

[this] crime' could be in [Smith]'s residence." Trial Court Opinion, 8/8/25, at 10 (citation omitted). Specifically, the court found that the affidavit provided the following sufficient information to support probable cause:

> [T]here were two shooters that exited a Nissan Maxima with the license plate number LTV2958; one of the shooters exited the back seat of the car wearing a black jacket with a "distinctive grey 'V' across the front of the jacket;" [Smith] was observed wearing that same jacket at the registered address of the Nissan used in the shooting; and Officer Montowski positively identified [Smith] as the shooter in the distinctive "V" jacket, but was wearing different pants and shoes.[4]

*Id.* Based on the above information, the court found it was reasonable to believe Smith took part in the shooting and fled home to change his clothes and that he would potentially retain the firearm in his home. *Id.* at 11.

We agree with the trial court's reasoning and conclusion. Our review discloses the affidavit provided the issuing magistrate with a substantial basis for concluding probable cause existed, and therefore, the trial court properly denied Smith's motion to suppress as to the search of his home.

_____

[4] In his appellate brief, Smith argues in a separate argument section that "Officer Montowski's 'Positive Identification' is Unreliable." Appellant's Brief, at 32. However, this issue is waived as Smith did not raise this as a basis for suppression at the suppression hearing, or in his 1925(b) concise statement. *See Commonwealth v. Smith*, 304 A.3d 35, 40 (Pa. Super. 2023) (finding claim waived on appeal where Commonwealth did not raise claim during suppression hearing); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"); *see also* Pa.R.A.P.1925(b)(4)(vii) ("Issues not included in the Statement … are waived.").

- 12 -

During the search of Smith's home, based on the above affidavit, the police seized Smith's black Nike brand zip-up hooded jacket with a "V" symbol across the chest, and Smith's cell phone. The police subsequently applied for a search warrant for Smith's cell phone. The affidavit of probable cause for the search of Smith's cell phone reiterated much of the factual basis supporting the search warrant for his home, with the following additional details of a conversation that occurred between Smith and police while his home was being searched:

> On 4/8/22 Search and Seizure warrant was executed at 1908 Plymouth Street by members of the Shooting Investigations Group along with S.W.A.T. Recovered from the basement bedroom was one black Nike hooded sweatshirt with "V" logo across the chest, one piece of mail in the name of Quasim Smith, and one Apple iPhone. All items were recovered and placed on Philadelphia Property receipts. Smith was on location and transported to SIG HQ for questioning.
>
> On 4/8/22 your affiant did speak with Quasim Smith post Miranda. Smith stated in summary that he was inside of his residence, located at 1908 Plymouth Street for most of the day on 3-11-22. Smith further stated he only left his residence when he received a phone call on his cellular phone (267-752-0251) from an individual who he refused to identify requesting marijuana. Smith stated at that time he went to 7172 N. 20th Street in an attempt to make the delivery but was unsuccessful. Smith stated at that time he left the porch area (illegible) stopped by Philadelphia police.
>
> Record checks were conducted on 267-752-0251 which lists T-Mobile as the cellular provider.
>
> Cell phones contain a multitude of storage folders that contain conversations, GPS data, photos, videos and voice recordings as well as the ability to load this information to cloud storage accounts. These files are stored on various folders created by the phone manufacturer and can include folders for deleted content

- 13 -

or archived content. In addition, users download messaging and social media applications as well as other applications which also store communications, GPS data, photos and voice recordings. Any time a user downloads a new application they provide permission to access various phone storage and program use permissions in order to use the application. All of this information sued by the third-party applications are stored in other folders within the phone. In your affiant's training and experience with cell phone extractions, evidence related to crimes is found in both the phone's manufacturer installed applications as well as the third-party applications and cloud accounts installed by the user.

Thus, your affiant is respectfully requesting that a search and seizure warrant be granted in order to power on, unlock and recover the stored data contents of Quasim Smiths black Apple I-Phone within a black case. Specifically, your affiant seeks to recover all phone identifiers, owner/user information, call logs, address books, contact lists, text messages, voice mails, emails, photographs, videos, social media data, any and all application data, and any other items of evidentiary value (to include SD/SIM cards) which may assist detectives in furthering their investigation.

*Id.* at Exhibit J.

Based on the above information, the court found "there was enough alleged to support a 'common-sense decision' that there [was] relevant evidence in [Smith]'s phone." Trial Court Opinion, 8/8/25, at 13 (citation omitted). Specifically, the court found that the affidavit provided the following sufficient information to support probable cause:

The information included within the probable cause statement states that [Smith] claimed that he could not have been at the shooting as he was in his house for most of the day. Further, [Smith] claimed that he only left the house once he received a call. Both of these claims can be verified with GPS and phone call data which, as the Affiant explained, is likely located on [Smith]'s phone. The affidavit explained that several phone applications can "store communications [and] GPS data" that could allow police to connect [Smith] to the crime. Thus, the Affidavit contained

- 14 -

sufficient information to allow a magistrate to make a "common sense decision" that there is "fair probability [that Smith's phone contains] evidence of [this] crime."

*Id.* (citations omitted).

We agree with the trial court's reasoning and conclusion. Our review discloses the affidavit provided the issuing magistrate with a substantial basis for concluding probable cause existed, and therefore, the trial court properly denied Smith's motion to suppress as to the search of his cell phone.

Based on the totality of the circumstances, we cannot find the suppression court erred in finding there was probable cause to believe evidence connecting Smith to the shooting would be found at his home and on his phone. The police did not conduct a warrantless search and properly obtained warrants supported by ample probable cause. As such, Smith is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/22/2026

- 15 -